IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Priscilla Eve Bradford, | ) | Civil Action No. 2:18-cv-649-RMG |
|---|---|---|
| Plaintiff, | ) ) ) ) ) | **ORDER AND OPINION** |
| v. | ) ) | |
| Molina Healthcare of South Carolina, LLC, | ) ) ) | |
| Defendant. | ) ) | |

Before the Court is the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 47) recommending that the Court grant in part, deny in part Defendants' Motion for Summary Judgment. (Dkt. No. 35.) For the reasons set forth below, the Court adopts the R & R as the Order of the Court and grants in part, denies in part Defendants' Motion for Summary Judgment.

I. Background

Plaintiff, Priscilla Eve Bradford ("Plaintiff"), brought the current action against Defendant Molina Healthcare of South Carolina, LLC ("Defendant"), alleging claims for retaliation and interference in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§2601–2654. (Dkt. No. 1 at ¶ 35.) In addition, Plaintiff brings claims for disability discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA") including the ADA Amendments Act of 2008 ("ADAA"), 42 U.S.C. §1201, *et seq.*, 42 U.S.C. § 12203 (*Id.* at ¶ 45.)

On November 4, 2013, Defendant hired Plaintiff as the Supervisor of its Member Services Department in Charleston, South Carolina. (Dkt. No. 1 at ¶ 11.) Plaintiff suffers from a history of depression and anxiety. (Dkt. No. 43-3 at ¶ 10.) Around July 15, 2015, Plaintiff requested

intermittent FMLA leave relating to her disabilities, including severe anxiety. (*Id.*) This request was approved and effective July 15, 2015 through July 15, 2016. (Dkt. No. 35-3 at 5.) Plaintiff renewed this request until July 7, 2017 on the same terms as the prior request. (*Id.* at 6–10.) Plaintiff was promoted to the position of Case Manager Supervisor or Health Care Services Operations Supervisor ("CMS") in Defendant's Healthcare Services Department and began her position on November 7, 2016. (Dkt. No. 1 at ¶ 12.) As a CMS Plaintiff reported to Reba Cartee ("Cartee"), the Director of Healthcare Services. (*Id.* at ¶ 13.) Cartee reported to Debra Enigl, the Vice-President of Healthcare Services. (*Id.*)

Additional responsibilities required Plaintiff to arrive to work and leave early on occasion. Plaintiff was in school obtaining her graduate degree. (Dkt. No. 43 at 5–6.) In addition, Plaintiff's son had asthma which required Plaintiff to take him to doctors' appointments. (*Id.*) Plaintiff's son was also enrolled in summer camp. (*Id.*; Dkt. No. 35-3 at 43.) Plaintiff's daughter had counseling and orthodontist appointments. (Dkt. No. 35-3 at 34, 40–43; Dkt. No. 43 at 5–6.) In addition to intermittent FMLA leave, Plaintiff claims that she was granted personal, non-FMLA absences to care for her two children and attend her graduate classes. (Dkt. No. 35-3 at 34, 40–43; Dkt. No. 35-2 at 46; Dkt. No. 43 at 5–6.) Plaintiff acknowledges that Cartee signed off on each of her absences for intermittent leave from November 2016 through May 2017. (Dkt. No. 35-2 at 18–19, 25, 31). In May 2017, Plaintiff renewed her intermittent FMLA leave relating to her anxiety and depression. It was approved and effective from May 8, 2017 through May 8, 2018. (Dkt. No. 35-3 at 36–37.) Plaintiff acknowledges Cartee signed off on her absences for intermittent leave during these periods. (Dkt. No. 35-2 at 22–23, 31–33; Dkt. No. 44-1 at 6.) Plaintiff agreed she received all the medical leave to which she was entitled under the FMLA during her tenure under Cartee's Operations Team. (Dkt. No. 35-2 at 64–66.)

On June 15, 2017, Cartee withdrew her approval of Plaintiffs' future absences. (*Id.* at ¶ 17.) On that day, Plaintiff arrived to work late without telling Cartee that she would be late. (Dkt. No. 35-3 at 46–47; Dkt. No. 35-4 at 3.) Cartee informed Plaintiff that until she regained Cartee's trust, Plaintiff would need to take full paid time off whenever she needed to miss work for personal, non-FMLA matters. (Dkt. No. 35-3 at 46–47; Dkt. No. 35-4 at 3.) In addition, Cartee suspended Plaintiff's temporary modified summer schedule which enabled Plaintiff to pick up her son from camp. (Dkt. No. 35-3 at 46–47; Dkt. No. 35-2 at 46.) Plaintiff acknowledge that the new attendance parameters affected only personal, non-FMLA absences, and did not impact her FMLA leave for anxiety and depression. (Dkt. No. 35-2 at 45–47.) Based on the less flexible parameters, Plaintiff indicated in an email to Cartee that she would apply for FMLA to take care of her children's' medical needs. (Dkt. No. 35-3 at 47.)

In July 2017, Plaintiff and her two children were injured in a car accident where she was significantly limited in sitting, lifting, walking, and bending. (Dkt. No. 1 at ¶ 25.) After the accident, Plaintiff filed an intermittent FMLA request and an ADA accommodation request. On July 11, 2017, Plaintiff filed for intermittent FMLA leave to care for her children based on their injuries from the car accident and other pre-existing medical conditions. (Dkt. No. 35-3 at 58–59.) The requests were granted on July 21, 2017 and were effective through July 21, 2018.[1] (Dkt. No. 35-3 at 72–73.) On July 18, 2017, Plaintiff submitted formal paperwork requesting an accommodation pursuant to the ADA for the injuries stemming from the car accident to attend

---

[1] Plaintiff acknowledges that she received all of the leave she requested for her children's treatment. (Dkt. No. 35-2 at 61–62.)

follow-up doctors' appointments. (Dkt. No. 35-3 at 66–69.) The request was granted on July 26, 2017. (Dkt. No. 43-5 at 40.)[2]

Plaintiff alleges Cartee began treating her differently after June 15, 2017 and turned hostile toward her for requesting additional leave and accommodations. (Dkt. No. 1 at ¶ 17; Dkt. No. 43-4 at 36–37.) Plaintiff claims that Cartee began excluding Plaintiff from meetings and ceased mentorship. (Dkt. No. 43-4 at 36–37.) In addition, Plaintiff testified Cartee treated her as if "she were one hundred percent disabled." (Dkt. No. 43-4 at 49.) In July 2017, Plaintiff contacted Jardina Campbell in Human Resources and told her she felt that Cartee was discriminating and retaliating based on her disability and medical leave accommodations. (Dkt. No. 43-4 at 34–35.) Plaintiff told Campbell she would seek assistance from the EEOC if Campbell did not investigate Cartee's alleged discriminatory conduct. (*Id.* at 35.)

Throughout this time, Plaintiff's anxiety and depression continued to worsen. On Thursday, August 17, 2017, Plaintiff was admitted to Palmetto Lowcountry Behavioral Health ("Palmetto") for inpatient care. (Dkt. No. 1 at ¶¶ 28, 30, 31.) Plaintiff was directed to stay at Palmetto from 8:00 a.m. to 3:30 p.m. during weekdays. (*Id.* at ¶ 31.) Plaintiff applied for and Defendant granted additional FMLA leave effective from August 16, 2017 through September 16, 2017 for partial inpatient care related to Plaintiff's anxiety and depression. (Dkt. No. 43-2 at 51–52.) On September 14, 2017, Enigl met with Plaintiff and department supervisors to inform them that their positions would be eliminated effective November 15, 2017. (Dkt. No. 43-6 at 43–44; Dkt. No. 43-4 47.) Plaintiff was terminated along with six other supervisors. (Dkt. No. 43-2 at 23–

---

[2] Plaintiff acknowledges that the accommodation to attend physical therapy was granted solely for purposes of treating her injuries from the car accident and was not related to the mental health conditions covered by her FMLA leave. (Dkt. No. 35-2 at 61.)

25; Dkt. No. 35-5 at 12.) Four of the six supervisors were offered lower-level positions with Defendant, but Plaintiff was permanently fired. (Dkt. No. 43-2 at 25–26.)

Defendant maintains Plaintiff was fired because Defendant was in the midst of an enterprise wide reduction in force ("RIF") where positions within corporate departments were reduced by ten percent as suggested by an outside consulting company. (Dkt. No. 43-2 at 15–17.) Defendant's consulting company recommended eliminating one layer of management in the Healthcare Services Department. (Dkt. No. 43-6 at 53.) Enigl was tasked with selecting one of three levels of management, director, manager, or supervisor to frontline for elimination. (*Id.* at 54.) As part of the RIF process, Enigl ranked the employees within the Healthcare Services Department based on job knowledge, reliability/attendance, communication skills, and overall performance. (Dkt. No. 43-6 at 45–46.) Enigl also received input from the department's three team directors. (*Id.* at 20–21, 46.) Using a template provided by the consulting group, directors evaluated subordinates and assigned them numerical categories (1–5) in each of the aforementioned categories. (*Id.* at 46–47.) Enigl considered RIF evaluation scores in relation to individual frontline staff reductions, but she did not rely on the scores to determine which level of management to eliminate. (Dkt. No. 35-5 at 11.) Enigl eliminated the supervisor level because it was less valuable than a manager role. (*Id.* at 12.) The individual supervisor scores were not considered in eliminating the position itself from the Healthcare Services Department (*Id.*)

On July 15, 2019, Defendants filed a motion for summary judgment seeking to dismiss all of Plaintiff's claims. (Dkt. No. 35.) Plaintiff filed a response in opposition and Defendants replied. (Dkt. Nos. 43, 44.) The Magistrate Judge issued an R & R recommending the Court dismiss Plaintiffs' FMLA interference claim. (Dkt. No. 47.) The R & R recommended the Court allow Plaintiffs' FMLA and ADA retaliation claims to move forward. (*Id.*) The R & R recommended

the Court allow Plaintiff's disability discrimination claim to move forward. (*Id.*) Defendant filed timely objections to the R & R on December 31, 2019 (Dkt. No. 49) and Plaintiff filed a response in opposition. (Dkt. No. 51.)

## II. Legal Standard

### A. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *US. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## B. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). In the absence of any specific objections, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Defendants timely filed objections and the R & R is reviewed *de novo*.

## III. Discussion

### A. FMLA Interference Claim

Upon a review of Plaintiff's FMLA interference claim, the Magistrate Judge correctly concluded this claim is subject to dismissal. To make out an FMLA interference claim, an employee must demonstrate that: (1) she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) that the interference caused the harm. *See Adams v. Anne Arundel Cty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). In this case, the record demonstrates Plaintiff received all of the FMLA leave to which she is legally entitled and that no one interfered with her use of that leave. (Dkt. No. 35-2 at 60–61, 64–66, 71.) Plaintiff testified that Cartee nor anyone else interfered with her FMLA leave. (*Id.* at 64–66.) As such, the Court agrees with the R & R to grant Defendant's motion for summary judgment as to Plaintiff's FMLA interference claim.

## B. FMLA and ADA Retaliation Claims

Upon a review of Plaintiff's FMLA and ADA retaliation claims, the Magistrate Judge correctly concluded these claims should move forward. The FMLA and the ADA make it unlawful for an employer to retaliate against an employee for opposing any practice made unlawful under these statutes. 29 U.S.C. § 2615 (a)(2); 42 U.S.C. § 12203. To prevail on a retaliation claim without direct evidence of retaliation, a Plaintiff must satisfy the three-step framework set forth in *McDonnell Douglas Corporation v. Green.* 411 U.S. 792, 800 (1973). Under the *McDonnell Douglas* framework, the plaintiff must establish a *prima facie* retaliation claim by showing: (1) she engaged in a protected activity; (2) her employer took an adverse employment action against her; and (3) the adverse employment action was causally connected to the plaintiff's protected activity. *Id*; *Yashenko v. Harrah's NC Casino Co., LLC*, 446 F.3d 541, 551 (4th Cir. 2006) (FMLA); *Reynolds v. Am. Nat. Red Cross*, 701 F.3d 143, 154 (4th Cir. 2012). Once the plaintiff establishes elements of a *prima facie* case, the burden shifts to the defendant to proffer evidence of a legitimate, non-discriminatory reason for the adverse employment action. *Yashenko*, 446 F.3d at 551; *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001). The burden then shifts back to plaintiff to rebut the defendant's evidence by demonstrating that the proffered reason was mere pretext for retaliation. *Yashenko*, 446 F.3d at 551; *Rhoads*, 257 F.3d at 392.

Defendant concedes Plaintiff engaged in protected activity by requesting FMLA leave and an accommodation under the ADA, and that terminating her employment constitutes an adverse employment action. (Dkt. No. 35-1 at 17.) Defendant argues there is insufficient evidence in the record on which Plaintiff can rely to establish a causal connection between her engaging in protected activity and her termination. (*Id.*; Dkt. No. 49 at 3–4.) It is well established in the Fourth Circuit that "very little evidence of a causal connection is required to establish a *prima facie* case

of retaliation." *See Burgess v. Bowen*, 466 F. App'x 272, 283 (4th Cir. 2012). Here, Plaintiff claims her employment was terminated on September 14, 2017. (Dkt. No. 43 at 26.) This comes approximately two months after requesting an accommodation to attend physical therapy (Dkt. No. 35-3 at 66–69); approximately one month after requesting continuous FMLA leave (Dkt. No. 35-3 at 76); and days prior to her scheduled return from continuous FMLA leave. (Dkt. No. 35-3 at 76.) Defendant argues temporal proximity is insufficient to establish a causal connection when there is evidence to suggest it approved leave requests over the course of Plaintiff's employment. (Dkt. No. 49 at 3–4.) Yet, at this stage the Court "is not to weigh the evidence, but rather must determine if there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Viewing the facts in a light most favorable to Plaintiff, there is sufficient evidence of a causal connection between Plaintiff engaging in protected activity and Defendant taking an adverse employment action against her. Plaintiff has established a *prima facie* case of retaliation.

Defendant proffers a legitimate non-discriminatory reason for terminating Plaintiff. Defendant maintains Plaintiff was terminated due to an enterprise wide RIF based on an external consulting group's recommendation that Defendant cut ten percent of the workforce (Dkt. No. 43-2 at 15–17.) As part of that process, Defendant decreased the number of reporting layers in the Healthcare Services Department. Dkt. No. 43-6 at 53.) Enigl chose to remove the supervisor level within the department and Plaintiff's position was eliminated. (*Id.* at 54.) In order to survive summary judgment, Plaintiff must demonstrate that this proffered legitimate, non-discriminatory reason for terminating her is pretext for retaliation.

There is an issue of material fact as to whether Defendant's justification for terminating Plaintiff is pretext. A Plaintiff may establish pretext by showing the defendant's explanation is "unworthy of credence" or by offering other forms of circumstantial evidence "sufficiently

probative" of intentional discrimination or retaliation. *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 721 (4th Cir. 2002). Here, Plaintiff does not challenge Defendant's proffered legitimate, non-discriminatory reason for the RIF, or the elimination of the supervisor position from the management structure. (Dkt. No. 43 at 28–29.) Plaintiff challenges Cartee and Enigl's displacement of the terminated supervisors, arguing that other supervisors were offered alternative positions within the company, whereas Plaintiff was the only supervisor on her team that was actually discharged as a result of the RIF. (Dkt. No. 43 at 18–19, 33–34.) Plaintiff argues that her RIF evaluation score of 8 stands in contrast to her overall job performance and is indicative of retaliatory animus. (*Id.* at 43–44.) Plaintiff compares her RIF ranking and overall job performance to that of another supervisor, Gregory Torrales. The Court reviewed the RIF score assigned to Torrales and his past work performance to determine whether Plaintiff's ranking is evidence of pretext as he is the only other terminated supervisor on the Operations Team that reported to Cartee. (Dkt. No. 43-2 at 25–26.)[3]

Upon a review of Cartee and Enigl's testimony regarding past work performance of Torrales and the Plaintiff, the Court finds there is an issue of material fact surrounding the legitimacy of Plaintiff's RIF score and the reasons behind her discharge. Cartee testified that Plaintiff was doing a "good job" in her role as supervisor and she "did well in engaging her staff." (Dkt. No. 43-1 at 23–24, 127–128.) Enigl testified Plaintiff was "very engaging with her team," and she observed Plaintiff doing a "good job." (Dkt. No. 43-6 at 21, 23–24.) The only weakness mentioned was that Plaintiff generally needed to learn more about healthcare services. (Dkt. No. 43-1 at 127.) In contrast, Cartee testified that Torrales, "had some weaknesses in learning how to

---

[3] Torrales was offered a demotion to another position after he was terminated from the Operations Department. (Dkt. No. 43-2 at 26.)

manage people." (*Id.* at 127–128.) In addition, Torrales transitioned from peer to peer managing which created a learning curve in his role as supervisor. (*Id.* at 127.) Cartee stated that Torrales did not have a degree which he was encouraged to obtain. (*Id.*) Cartee testified that "in comparing [Torrales's] skills as a supervisor to others, he would not have been stellar." (*Id.* at 127–128.) Cartee and Enigl gave Torrales a 14.25 on the RIF score, whereas Plaintiff received an 8. (Dkt. No.43-2 at 18.) In the comments section of Plaintiff's RIF evaluation it reads "overall, performance poor" which stands in direct contradiction to the decisionmakers positive testimony regarding her. (*Id.*) Viewing the record as a whole and in a light most favorable to Plaintiff, it appears that Enigl and Cartee offered a demotion to Torrales, a supervisor who did not require continuous FMLA leave or ADA accommodations, but terminated Plaintiff's employment entirely after giving her a lower RIF score despite testimony that Torrales's performance as a supervisor fell below that of his peers, and that Plaintiff was a good and engaging team leader. Accordingly, there is an issue of material fact with regard go whether Defendant's justification for firing Plaintiff is pretext of retaliation. The Court agrees with the R & R to deny Defendant's motion for summary judgment with regard to Plaintiff's FMLA and ADA retaliation claims.

## C.  ADA Discrimination Claim

Regarding Plaintiff's claims for disability discrimination in violation of the ADA, the Magistrate Judge correctly determined this claim should move forward. The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Claims for disability discrimination are established under the *McDonnell*

*Douglas* burden shifting framework. *Gomez v. Haystax Tech., Inc.*, 292 F. Supp. 3d 676, 685 (E.D. Va. 2017), *aff'd*, 761 F. App'x 220 (4th Cir. 2019).

First, Plaintiff must establish a *prima facie* claim for disability discrimination claim under the ADA. Plaintiff must show: (1) she had a disability covered by the ADA; (2) she was discharged; (3) at the time of her discharge she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). If Plaintiff succeeds, Defendant has the burden to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Gomez*, 292 F. Supp. 3d at 683. If the employer articulates a legitimate, non-discriminatory reason for the adverse employment action, the employee has a burden to show the articulated reason was actually pretext for discrimination. (*Id.*)

Defendant concedes Plaintiff satisfies the first three elements of her *prima facie* claim, but contests whether Plaintiff can produce evidence to show that the termination of her employment occurred under circumstances that give rise to a reasonable inference of unlawful discrimination. (Dkt. No. 35-1 at 21–22.) Plaintiff's RIF score of 8 and comment that "overall performance is poor" stand in contrast to Cartee and Enigl's testimony regarding her overall work performance as "good" and that Plaintiff was engaging with her staff. (Dkt. No. 43-1 at 23–24, 126–128; Dkt. No. 43-6 at 21, 23–24.) In addition, Cartee and Enigl testified Torrales performed at a lower level than his peers, but he received a RIF score of 14.25. (Dkt. No. 43-1 at 126–128; Dkt. No. 43-2 at 18.) Torrales, who did not appear to have a disability, was terminated as supervisor but offered an alternative position within the company. (Dkt. No. 43-2 at 25–26.) Yet Plaintiff, who had a disability was terminated as a supervisor and was not offered an alternative position within the

company. Although Defendant raises a legitimate, non-discriminatory reason for Plaintiff's discharge, the Court agrees with the R & R that viewing the evidence in a light most favorable to Plaintiff there is a question of material fact as to the legitimacy of the reason. Defendant's motion for summary judgment is denied as to Plaintiff's ADA disability discrimination claim.

In summary, Defendant's motion for summary judgment is granted as to Plaintiff's FMLA interference claim. Defendant's motion for summary judgment is denied as to Plaintiff's FMLA and ADA retaliation claims and denied as to Plaintiff's ADA disability discrimination claim.

**IV. Conclusion**

For the reasons set forth above, the R & R of the Magistrate Judge is **ADOPTED**. (Dkt. No. 47.) Defendant's motion for summary judgment (Dkt. No. 35) is **GRANTED IN PART, DENIED IN PART**.

**AND IT IS SO ORDERED.**

_____
Richard Mark Gergel
United States District Court Judge

January 23, 2020
Charleston, South Carolina